## MOORE *v.* MISSISSIPPI.

1. Where a case is brought here from the highest court of the State under the assumption that it is within section 709 of the Revised Statutes, if the record shows upon its face that a Federal question was not necessarily involved, and does not show that one was raised, this court will not go outside of it—to the opinion or elsewhere—to ascertain whether one was in fact decided.

2. Hence, when a record from such a court disclosed the fact that a person had been indicted on an indictment which contained certain counts charging him with selling lottery tickets, and certain others charging him with keeping a gaming table, both in violation of statute, and that he pleaded in bar to the *whole* indictment, a statute of earlier date which went to justify his issuing of the lottery tickets, but not to justify his keeping of a gaming table, and the plea, on demurrer, was held bad, and on his then pleading Not Guilty, he was found guilty, generally, and a proper judgment entered against him ; this court held—there having been no bill of exception taken at the trial and no error specifically stated in the record—that it would not look out of the record—into the opinion of the court (made part of the transcript) or elsewhere—to see that the defendant had set up that the statute under which he was indicted and convicted violated the obligation, of a contract made by the prior one, which he had set up in bar to the whole indictment. The record showing that the plea had answered but part of the indictment, the judgment had a proper base for it, and no other matter being properly alleged for error it was rightly to be affirmed.

ERROR to the Supreme Court of Mississippi.

The present constitution of Mississippi, ratified in 1869, ordains,

"That the legislature shall not authorize any lottery; nor shall any lottery *heretofore authorized,* be permitted to be drawn, or tickets therein to be sold."

And to give effect to this provision, an act of the legislature of the State, passed in 1870, enacted,

"That *every lottery and gift enterprise, of whatever name or description, regardless of the authority of law heretofore creating the same,* be, and the same is hereby prohibited, and declared a nuisance and misdemeanor, against the public policy of the State, and that whoever is concerned . . . in any way or manner whatsoever therein . . . shall upon conviction be fined," &c.

This statute being on the statute-book, Moore was indicted in one of the Circuit Courts of the State. The indictment charged him in five counts with selling lottery tickets, and *in two with keeping a gaming table.* He pleaded in bar to the *whole* indictment "that in issuing the ticket or certificate mentioned and specified in the indictment, he was acting as the agent of the Mississippi Agricultural, Educational, and Manufacturing Aid Society, a body politic and corporate, which was duly incorporated by an act of the legislature of the State of Mississippi, approved February 16th, 1867, and that prior to the adoption of the present constitution of the State said Mississippi Agricultural, Educational, and Manufacturing Aid Society fully complied with all the provisions of said act of incorporation."

The charge of issuing tickets or certificates was made, as already said, only in five out of the seven counts in the indictment. The State demurred to the plea, because, 1, it showed no valid bar to the prosecution, and 2, it amounted to the general issue and nothing more. The court sustained the demurrer.

Moore then pleaded not guilty and went to trial. The jury returned a verdict of guilty, generally, and the proper judgment was entered thereon. No bill of exceptions was taken at the trial, and no error was specifically stated on the record.

The case was taken to the Supreme Court of the State by writ of error, and the judgment of the court below was there affirmed. The record proper did not show what errors were assigned in the Supreme Court. Appended to the transcript of the record, or as a part of it, was the opinion of the Supreme Court of the State, preceding the judgment now brought here on error.

The present writ of error was prosecuted under section 709 of the Revised Statutes,* to obtain a re-examination of the case.

*Mr. P. Phillips, for the plaintiff in error,* setting out its lan-

---

* See the section, in the Appendix.

guage, and going much into its details, insisted that the act of incorporation under the authority of which Moore acted in the sale of the lottery ticket, was a contract between the corporators and the State, which was protected by that clause of the Constitution of the United States which prohibits a State from passing any law impairing the obligation of contracts; that as appeared by the opinion of the Supreme Court in the case appended to the transcript of the record (and to which, since the decision in *Murdock* v. *Memphis*,* reference might be made as constituting a part of it), it was plain that there had been drawn in question the validity of the statute of the State on the ground of its being repugnant to this clause of the Constitution of the United States, and that the decision of the highest court of the State had been in favor of such its validity. The jurisdiction of this court to re-examine and reverse, he argued was, therefore, clear under section 709 of the Revised Statutes (identical with the act of February 5th, 1867, itself a substitute for the twenty-fifth section of the Judiciary Act), and the error of the Circuit Court in sustaining the demurrer to the plea was equally plain, on the case as existing and admitted.

*Messrs. T. W. Bartley and G. F. Edmonds, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The only error relied upon in the argument here relates to the action of the Circuit Court of the State in sustaining the demurrer to the plea.

We are not required to re-examine the judgment of a State court simply because a Federal question may have been decided. To give us jurisdiction it must appear that such a question " was necessarily involved in the decision."† The old rule, established by early cases, restricted our inquiries as to the existence and decision of the question " to the face of the record." Previous to the act of 1867,‡ it was

---

* 20 Wallace, 638.

† Armstrong *v.* Treasurer of Athens Co , 16 Peters, 282.

‡ Revised Statutes, § 709.

uniformly held, except as to the State of Louisiana, where a peculiar practice prevails, that we would not look into the opinions of the courts to ascertain what had been decided.* Since that act, however, in *Murdock* v. *Memphis*,† we intimated that we might, under some circumstances, examine those opinions, when properly authenticated, as far as might be useful for the purpose of ascertaining that fact, but at the same time were careful to say that, " after all, the record of the case, its pleadings, bills of exceptions, judgments, evidence, in short, its record, whether it be a case in law or equity, must be the chief foundation of inquiry; and while we are not prepared to fix any absolute limit to the sources of inquiry under the new act, we feel quite sure it was not intended to open the scope of it to any loose range of investigation." We are not now called upon to fix this limit. It is sufficient for all the purposes of this case to hold as we do, that if the record shows upon its face that a Federal question was not necessarily involved and does not show that one was raised, we will not go outside of it, to the opinion or elsewhere, to ascertain whether one was in fact decided.

In this case the record shows clearly upon its face that the decision of such a question was not required. The indictment was for selling lottery tickets and keeping a gaming table. The plea, although to the whole indictment, met only part of it. The charge of keeping a gaming table was left entirely unanswered.

A plea to be good as a bar to the whole indictment must meet the whole case. If it does not it will be held bad upon demurrer.

The demurrer to this plea was, therefore, properly sustained upon this ground. Such being the case it is a matter of no consequence to us that the court may have gone further and decided a Federal question. The decision of such a

---

* Gibson *v.* Chouteau, 8 Wallace, 317; Rector *v.* Ashley, 6 Id. 142; Williams *v.* Norris, 12 Wheaton, 117; Railroad Company *v.* Marshall, 12 Howard, 165; Cousin *v.* Blanc, 19 Id. 202.

† 20 Wallace, 633.

question was not necessarily involved in the determination of the cause.

It follows that this writ of error must be

DISMISSED.