HERBERT W. CUTTING et al. *vs.* JAMES H. HARRINGTON.

Sagadahoc.    Opinion March 17, 1908.

*Execution Sale.   Recitals in Officer's Deed.   Same are Evidence.   Notice Sent by
Mail.   Prepayment of Postage Presumed.   Revised Statutes,
chapter 78, section 33.*

1.  When a levy of execution upon land is made by sale instead of by
extent, a return of such upon the execution itself is not required by the
statute and is not essential to the purchaser's title.

2.  The recitals by the officer in his official deed to the purchaser of land at
execution sale are evidence of his doings in advertising and making the
sale.

3.  A recital by an officer in such deed that he "sent a notice (to the judg-
ment debtor) by mail," fairly and sufficiently imports that he prepaid the
postage as required by the statute, R. S., chapter 78, section 33.

On report.   Judgment for plaintiff for one undivided third only
of the demanded land.

Real action to recover a certain lot or parcel of land at "Rising
Sun or Log Landing" in the town of Phippsburg.   Plea, the
general issue with brief statement that the defendant "claims title
to two undivided third parts of said demanded premises and no
more."

This action came on for trial at the December term, 1906,
Supreme Judicial Court, Sagadahoc County, at which time the facts
were agreed upon and then by agreement of the parties the case was
reported to the Law Court for that court to render such judgment
as the law and the evidence required.

In 1874, one Thomas M. Reed was seized of the demanded
premises and remained seized of the same until his death and then
under his will, admitted to probate in 1882, the title to the same
passed to his three nephews, Franklin Reed, Edwin Reed and
Andrew F. Reed, in equal shares.

On September 2, 1897, the Bath National Bank recovered a
judgment against said Franklin Reed, then and thereafterwards a

resident of Boston, Massachusetts, in the Supreme Judicial Court, Sagadahoc County, for the sum of $2366.97, debt and costs, and on September 27, 1897, it seized upon the execution issued thereon all the right, title and interest which the said Franklin Reed had on November 24, 1894, the date when the same was attached on the original writ, in and to certain parcels of real estate in Sagadahoc County, among them being the demanded premises, and on October 30, 1897, the right, title and interest of the said Franklin Reed in and to the demanded premises was sold at sheriff's sale upon said execution and bid in by the said Bath National Bank, a deed thereof being executed and delivered by the sheriff to said Bath National Bank, October 30, 1897.

On August 25th, 1898, the said Bath National Bank recovered a judgment in the said Supreme Judicial Court against said Andrew F. Reed, then and thereafterwards a resident of Boston, Massachusetts, for the sum of $2529.53, debt and costs, and on September 22, 1898, it seized upon the execution issued thereon, all the right, title and interest which the said Andrew F. Reed had on September 13, 1895, the date when the same was attached on the original writ, in and to certain parcels of real estate in Sagadahoc County, among them being the said demanded premises, and on October 31, 1898, the right, title and interest of the said Andrew F. Reed in and to the demanded premises was sold at sheriff's sale upon said execution and bid in by the said Bath National Bank, a deed thereof being executed and delivered by the sheriff to said Bath National Bank, October 31, 1898.

The defendant's title to the two undivided thirds of the demanded premises depended upon the validity of the two aforesaid execution sales, the plaintiff contending that there was not sufficient legal evidence that the sheriff gave to the judgment debtors the personal notices of the sales provided by statute.

The sheriff's return of sale on the execution against said Franklin Reed, so far as the same relates to the personal notice given to said Franklin Reed is as follows: "And on the same 27th day of September A. D. 1897, being more than thirty days before the time appointed for the sale hereafter mentioned, I sent to the said

Franklin Reed a notice in writing that said right, title and interest would be sold by public auction on the 30th day of October, 1897, at 10 o'clock in the forenoon at the sheriff's office in Bath in said county," etc.   The execution against said Andrew F. Reed was not returned to the office of the clerk of courts and the record does not disclose that the sheriff ever made any return of sale thereon.

The sheriff's deed of the demanded premises sold on the execution against the said Franklin Reed, so far as the same relates to the personal notice of sale given to the said Franklin Reed, contains a recital as follows:   "And whereas, on the twenty-seventh day of September A. D. 1897, I sent to the said Franklin Reed a written notice by mail that on the thirtieth day of October, A. D., 1897, at ten o'clock in the forenoon at the sheriff's office in the city of Bath in the said county of Sagadahoc, said right, title and interest of the said Franklin in and to the real estate aforesaid, would be sold at public auction, said notice having been given at least thirty days before said time appointed for the sale."   The sheriff's deed of the demanded premises sold on the execution against the said Andrew F. Reed, also contains a similar recital differing only in the necessary change in name and dates.

Revised Statutes, chapter 78, section 33, prescribing the notices to be given by the officer when real estate has been seized on execution and is to be sold at public auction, reads as follows:   "The officer in such case shall give written notice of the time and place of sale, to the debtor in person, or by leaving the same at his last and usual place of abode, if known to be an inhabitant of the state, and cause it to be posted in a public place in the town where the land lies, and in two adjoining towns, if so many adjoin ; and if the land is situated in two or more towns, then in each of those towns, and in two towns adjoining each of them ; and if the land is in two or more counties, an officer in either county may sell the whole right.   When the land is not within any town, the notice shall be posted in two public places of the shire town of the county in which the land lies, instead of the posting aforesaid.   When the debtor is not a resident of such county, the personal notice may be forwarded to him by mail, postage paid ; all to be done thirty days before

the day of sale. The notice shall also be published for three weeks successively before the day of sale, in a newspaper printed in whole or in part in such county, if any, otherwise in the state paper."

The case is stated in the opinion.

*Staples & Glidden,* for plaintiffs.

*George E. Hughes,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J.　Real action on report.　The controversy is over two undivided thirds of the demanded land which the defendant claims under levy of execution.　The judgment and the execution are admitted to be valid.　The levy was by sale of the land under what is now R. S., ch. 78, sec. 32 et seq.　The only objection urged against the validity of the sale and its efficacy to pass the title to the purchaser is that there is not sufficient legal evidence that the officer gave to the judgment debtor the notice of sale provided by the statute.

The plaintiffs claim that the only competent evidence of such notice is the return of the officer upon the execution, which return in this case may be conceded, arguendo at least, not to show sufficient notice.　But as was said by this court in *Caldwell* v. *Blake,* 69 Maine, 458, at page 470 : "Where an extent is made upon lands, the return of the officer must be seasonably made and recorded. Not so where property is sold upon execution.　The statute does not require it, and the decisions are that 'the purchaser's title is not dependent on the performance of this duty by the officer.　The purchaser has no control over the officer, and is not prejudiced by a deficient or incorrect return, nor by the entire absence of any return whatever.'"　The giving the notice of sale, and how given, may be proved, prima facie at least, by the officer's recitals in his official deed to the purchaser.　Wigmore on Evidence, sec. 1664.

In his official deed in this case the officer recited that he "sent to the (judgment debtor, naming him) a written notice by mail" of

the time and place of sale, the debtor not being a resident of the county in which the land lay. The statute (sec. 33) provided that in such case the notice might be "forwarded to him (the debtor) by mail, postage paid." The plaintiffs contend that, even if the recitals are evidence, the omission of the words "postage paid" from the recital is fatal, and that because of that omission the purchaser acquired no title.

In cases of levy upon land by extent, (where, instead of being sold at public sale after public notice, the land was transferred direct to the judgment creditor, as was formerly the practice in Maine and other New England States), it was generally held that the officer's return of his doings must be drawn with fullness and exactness. Inferences and presumptions were allowed little, if any, force. Such has been the rule of construction in this State in such cases. We do not think, however, that those decisions control the decision of cases like this, where the land is sold at public sale after ample public notice. Indeed, it is very generally held in the other States that when a sale upon execution is actually made and a deed executed and delivered to the purchaser, no evidence of notice of the sale having been given need be adduced by him in support of his title. In Freeman on Executions, 3rd ed. sec. 286, the learned author, with many citations of authorities, says: "A very decided preponderance of the authorities maintains this proposition; that the statutes requiring notice of the sale to be given are directory merely, and that the failure to give such notice cannot avoid the sale against any purchaser not himself in fault. This rule has been applied in cases where the purchaser was aware of the deficiency of the notice, and seems applicable in all cases in which the absence of the notice was not occasioned by some fraud or collusion of which the purchaser had notice, or in which he participated." The theory seems to be that, while the officer is responsible to any party harmed by the absence of insufficiency of the prescribed notice of sale, the sale itself cannot be collaterally avoided thereby. Sec. 339. The purchaser at an execution public sale, or his grantee, is not in the same relation to the judgment debtor as is the judgment creditor taking the debtor's land direct to himself by extent. Their titles

are different in origin and nature. The purchaser may have the benefit of reasonable inferences and presumptions in reading the officer's recitals of his doings without conflicting with the strict rule in cases of levy by extent. Sec. 339 of Freeman on Executions. Thus in *Wood* v. *Morehouse,* 45 N. Y. 368, where one question was whether the officer had given the proper notice of an execution sale, the court held that, in the absence of evidence to the contrary, it was to be presumed, under the maxim omnia praesumuntur rite esse acta, that the officer gave the proper notice. Other cases to the same effect are cited by Freeman in the sec. 339 above cited.

In this State, also, the strict rule applied to returns of levy by extent has been relaxed in cases of levy by sale. In *Bailey* v. *Myrick,* 50 Maine, 171, the statute required the notice of sale to be published in some "public newspaper." The officer returned that he had published the notice in "a newspaper," omitting the word "public." The court held that it sufficiently appeared that the statute was complied with, that the word "newspaper" imported publicity. In *Millett* v. *Blake,* 81 Maine, 531, the judgment debtor was described in the execution as residing in Lagrange. In his recital of sending a notice by mail, the officer did not state that he directed it to the debtor at Lagrange. The court held that such a direction could be inferred, saying, page 535 : "Something may be inferred as to the correctness of the action of a public officer when the law requires him to do a certain act."

In the case at bar, as already stated, the statute provided that the notice to the debtor might be "forwarded to him by mail postage paid." The officer recited he "sent to the said (debtor) a written notice by mail." Taking into account the legal presumption "as to the correctness of the action of a public officer when the law requires him to do a certain act," as was done in *Millett* v. *Blake,* supra, we think it a fair, and even obvious, inference that the officer prepaid the postage. It was at the time (1897 and 1898) well known that under the postal laws and regulations, mail matter would not be forwarded without prepayment of postage. It had then, as now, become a fixed habit especially among business men and officials, to prepay postage by means of affixing a stamp. Any

one then asserting he had "sent by mail" a letter or document, would have been universally understood as asserting that he had done everything required to insure its being forwarded, including pre-payment of postage as well as depositing the letter in the proper post office receptacle.   If convinced that in fact he had not prepaid the postage, he would have retracted his assertion that he had "sent" the letter.   The single word "mailed," as used by a notary in his certificate, is held to imply that the requisite postage was prepaid. *Rolla State Bank* v. *Pezoldt,* 95 Mo. App. 404, 69 S. W. 51. The words "sent by mail" would seem to be of as strong import in any connection.

We find no previous decision of this court in cases of levy by sale compelling us to construe the officer's recitals in this case so strictly and technically as the plaintiffs would have us.   In *Pratt* v. *Skolfield,* 45 Maine, 386, where the officer's deed was held defective for want of sufficient recitals, the defects are not stated. Hence that case is no guide.   Even in the cases of levy by extent, no return has been adjudged insufficient because of an omission like this.   Granting that the court should be critical in constructing official returns to see that all essentials are fully stated, or clearly implied, or presumed by law, yet it would be hypercritical to hold at this day that an official recital by an officer that he had "sent a written notice by mail" does not import that he affixed the usual stamp, thus prepaying the postage, (that being his official duty) as well as that he deposited the document in the proper post office receptacle.

No other objection is made to the deed or recitals in the deed, and none is perceived.   It must be held, therefore, that the defendant has the better title to two-thirds, and that the plaintiff can only have judgment for one-third of the land.

> *Judgment for the plaintiff for one undivided third only of the demanded land.*